E-FILED
Friday, 19 February, 2021  01:35:47 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**SPRINGFIELD DIVISION**

| | |
|---|---|
| **CGB DIVERSIFIED SERVICES, INC.** ) | |
| ) | |
| **Plaintiff,** ) | |
| **v.** ) | **CASE NO.** 21-cv-3050 |
| ) | |
| **WAYNE TRIPLETT** ) | |
| ) | |
| **Defendant.** ) | |

**VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

CGB Diversified Services, Inc. ("Diversified"), for its Verified Complaint for Injunctive Relief and Damages against Defendant Wayne Triplett ("Triplett"), states as follows:

**NATURE OF ACTION**

1.      Diversified brings this action to address the actual, imminent, and continued irreparable harm resulting from Triplett's breach of his Non-Solicitation, Non-Compete and Confidentiality Agreement; Triplett's unlawful use and disclosure of Diversified's trade secrets and confidential and proprietary information; and Triplett's tortious interference with Diversified's contracts and business relations.

2.      Until recently, Triplett was employed by Diversified as a Risk Management Specialist.  Triplett's employment responsibilities included the sale and servicing of multi-peril crop insurance contracts under the federal crop insurance program; the maintenance and development of customer, agent, and other business relationships; and the marketing, promotion, and recommendation of Diversified insurance products based upon the specific needs of Diversified's customers.

3.      In his position with Diversified, Triplett was trusted with Diversified's confidential and proprietary information and trade secrets, including, but not limited to, Diversified's private-risk management products and systems, information about crop insurance and Diversified's customers, sensitive strategic information about detailed marketing plans, insurance product development, risk analysis, and customer and agent development and retention, along with numerous proprietary matrices relating to indemnities and pricing. Triplett was provided continuous access to this dynamic information, as part of his employment, to service and develop Diversified's customer portfolio and "book" of business throughout Minnesota and South Dakota. Accordingly, as a condition of Triplett's employment, he entered into a Non-Solicitation, Non-Compete, and Confidentiality Agreement with Diversified (the "Agreement").

4.      Sometime around January 4, 2021, Triplett suddenly, and without notice, abandoned his employment with Diversified. Triplett notified no one in human Resources or any managers to whom he reported that he was leaving. In fact, as of this filing, Triplett still has not officially notified Diversified of his resignation and has been terminated within Diversified's system based on job abandonment.

5.      Both prior to **and** since leaving his employment with Diversified, Triplett has engaged in unlawful misconduct through unauthorized appropriation, use, and disclosure of Diversified's trade secrets and confidential and proprietary information; engaged in actions directly against the business interests of, and in competition with, Diversified; and engaged in actions that interfere with Diversified's contracts and business relationships, all in violation of Triplett's Agreement and federal and state law.

6.      Diversified spent substantial time, effort, and resources in developing the very confidential and proprietary information and trade secrets that Triplett is misusing. Additionally,

this information is sufficiently secret to derive economic value from not being known to other persons who can obtain economic value from its disclosures and use, and Diversified takes reasonable measures to safeguard the secrecy of this information.

7.     On information and belief, Triplett has derived economic value from his improper use of Diversified's confidential and proprietary information and trade secrets.

8.     Triplett's intentional, willful and egregious misconduct includes but is not limited to violations of the following: (i) the federal Defend Trade Secrets Act and Illinois Trade Secrets Act, (ii) Triplett's Agreement; and (iii) laws prohibiting tortious interference.  Diversified, therefore, brings this complaint for injunctive relief to avoid further harm and seeks monetary damages sufficient to compensate Diversified for harm done.

9.     For purposes of immediate temporary and preliminary injunctive relief, timing is critical.  The crop insurance sales closing date for almost all 2021 spring crops in the Mid-South is February 28, 2021.  Since Triplett's abandonment of his job, Diversified has begun receiving applications to cancel or transfer crop insurance policies from its customers previously serviced by Triplett.  The impetus for such applications to cancel or transfer is Triplett.  Importantly, once a policy is placed with a particular provider, like Diversified, customers rarely change providers. Crop insurance policies automatically renew each year unless affirmative steps are taken—steps like those taken by Triplett.  Absent an immediate temporary restraining order and preliminary injunction to preserve the status quo, Diversified will continue lose customers and suffer damage to its reputation and goodwill as a result of Triplett's egregious and illegal conduct.

## PARTIES

10.     Diversified is a Louisiana corporation with its principal place of business in Jacksonville, Illinois.

11.     Wayne Triplett is an individual who, on information and belief, resides in Annandale, Minnesota.

12.     Crop Revenue Agency LLC is a Minnesota limited liability company with its principal place of business, on information and belief, in Annandale, Minnesota.

## JURISDICTION AND VENUE

13.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, because one of Diversified's claims arises under 18 U.S.C. §1832 *et seq*., the federal Defend Trade Secrets Act of 2016.  This Court has supplemental jurisdiction over Diversified's remaining claims pursuant to 28 U.S.C. §1367.  Alternatively, the Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332, as the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different States.

14.     The Court has personal jurisdiction over Triplett by virtue of the forum selection clause contained in Triplett's Non-Solicitation, Non-Compete, and Confidentiality Agreement, which provides for jurisdiction and exclusive venue in the appropriate federal district court (based on diversity of citizenship) where Diversified does business in the state of Illinois.

15.     Venue properly lies in this Court by virtue of the forum selection clause contained in Triplett's Non-Solicitation, Non-Compete, and Confidentiality Agreement, which provides for forum and venue in the appropriate Illinois federal district court (based on diversity of citizenship) where Diversified does business in the state of Illinois. Given Diversified's principal place of business in Jacksonville, Illinois, this Court is the proper venue.

## FACTUAL BACKGROUND

### *Diversified*

16.     Diversified is a managing general agent and underwriter of crop insurance.  Crop insurance protects farmers in the event that they are unsuccessful in producing acceptable crops as a result of certain events such as hail, drought, or other unanticipated events. Diversified provides crop insurance products, risk management, grain marketing, and adjusting services for federal cop insurance programs.

17.     Diversified, which does business as "Diversified Crop Insurance Services," is a company with its principal place of business located in Jacksonville, Illinois.  Diversified functions as the managing general agency for American Agri-Business Insurance Company ("AA-BIC"). As the managing general agency for AA-BIC, Diversified sells and writes crop and livestock insurance policies, collects premiums from the insureds on those policies, and services those polices.

18.     In the course of its business, Diversified stores and secures confidential information and trade secrets in a variety of ways depending on their nature and scope.  Some materials are stored in electronic databases, or on computers or other devices, with restricted access based on an employee's or management's need to access information.  Even within these databases, employees, and even management, may have only limited access to certain fields or portions of data.  Indeed, the crop insurance industry is a government-regulated industry so in some instances, additional safeguards like Triplett's non-solicitation, non-compete and confidentiality agreement are also utilized.

19.     Diversified relies on trade secrets, other confidential information, and proprietary methods and processes in developing and marketing its crop insurance.  Diversified has spent years

cultivating relationships and working with its customers to identify and implement strong protections based on each farmer's needs. It also has invested substantial resources developing business models, analytics risk analyses, and other indices to estimate indemnities, profit, loss, and other critical and proprietary information regarding its crop insurance business. Diversified's relationships, confidential information, and trade secrets give Diversified an advantage over its competitors, of which there are only 13 currently in existence.

20.      Given the nature of the relationship between Diversified and AA-BIC, Diversified is also responsible for safeguarding the confidential and proprietary business information of AA-BIC that Diversified is entrusted to access and use in the performance of its duties as the managing general agent for AA-BIC. Consequently, Diversified employees are obligated as well to maintain and safeguard AA-BIC confidential and proprietary business information that they routinely access in the performance of their job duties.

21.      Diversified employees (including Triplett) are made fully aware of the confidential nature of the information and data that they are given access to, as well as the importance of maintaining confidentiality. The Diversified Employee Handbook provides, in part, as follows:

**Confidentiality**

As employees at CGB, we will each work with a great amount of information each day. These may include Company confidential business information. It may also include the confidential business information of others with whom the Company does business, which the Company and its employees are required to keep confidential. The protection of confidential business information is vital to the interest and success of the Company. Such confidential information includes, but is not limited to:

- Customer Lists
- Customer contact information
- Confidential customer information
- Financial information
- Marketing strategies related information
- Purchasing practices and strategies and related information

- Price lists and pricing strategies and related information
- Research and development strategies and related information
- Vendor and supplier lists
- Vendor and supplier contact information
- Confidential vendor information

Company employees are not to disclose or use for any improper and unauthorized purpose, any confidential information involving the Company, its employees, or any third parties. Confidential information constitutes the property of the Company or of others, and no employee is authorized to use such information for his/her personal benefit or for any other purpose except as authorized by the Company for fulfillment of his/her job duties. Any confidential information in the possession of an employee must be returned to the Company as directed.

22.    In addition, employees at Diversified (including Triplett) are subject to and governed by a written Code of Conduct that sets out and discusses Diversified's standards of business ethics and compliance. That Code of Conduct provides, among other things, that every Diversified employee has a duty "to safeguard Company confidential information in to use the information only for business purposes." The Code of Conduct contains similar standards regarding third-party confidential information and requires that all Diversified employees (including Triplett) safeguard third-party confidential information to which they are given access during their employment with Diversified.

23.    As an approved federal crop insurance provider in the federal crop insurance program, Diversified is required to ensure that all persons having access to certain protected information who are either employed by or have contracted with Diversified sign an individual Non-Disclosure Statement (NDS). The cooperative financial assistance agreement with the Federal Crop Insurance Corporation ("FCIC") sets forth these requirements, which are also found in the Federal Crop Insurance Act ("FCIA") (7 U.S.C. § 1501 *et seq*.), the regulations promulgated pursuant to the FCIA (7 C.F.R. Part 400), and the Federal Privacy Act (5 U.S.C. § 552a). Each

NDS signed by Diversified employees must be maintained by Diversified and made available for examination by the United States Department of Agriculture.

**_Wayne Triplett_**

24.     Triplett began working at Diversified in February 2015, as a Risk Management Specialist.

25.     As a condition of his Diversified employment, Triplett signed a Non-Solicitation, Non-Compete and Confidentiality Agreement (the "Agreement").  A true and correct copy of the Agreement is attached and incorporated herein as Exhibit "A." Triplett was also required to sign a federal NDS as well, in accordance with FCIA mandates.

26.     As a Risk Management Specialist, Triplett was responsible for the sale and servicing of multi-peril crop insurance contracts under the federal crop insurance program; the maintenance and development of customer, agent, and other business relationships; and the marketing, promotion, and recommendation of Diversified insurance products based upon the specific needs of Diversified's customers.  Consequently, as part of his employment, Triplett was given access to Diversified's customer information, strategy, and customer profiles as part of his employment.

27.     Much of the information that Triplett was given access to and used to do his job as a Risk Management Specialist is closely held by Diversified and is restricted such that not all Diversified employees have access to this information.  Diversified protects this information because it is the product of years of data analysis and customer management, and includes internal financial and risk information. Triplett would not have had access to this information but for his employment as a Risk Management Specialist with Diversified.

28.     Over Triplett's time as a Risk Management Specialist, Diversified made large investments in Triplett other than his salary, offering Triplett extensive resources for use in cultivating Diversified's agents and customers.  Through Diversified's investment and the access provided to him in the course of his employment, Triplett became familiar and built relationships with Diversified's agents, customers, and employees.

29.     Prior to abandoning his job with Diversified, Triplett was agent for and serviced nearly 300 Diversified customers throughout Minnesota, Iowa, North Dakota, and South Dakota. Loss of such customers through Triplett's unlawful and prohibited conduct would be devastating to Diversified, as the combined premiums for those policies represented nearly $4,000,000 in revenue for the Buffalo, Minnesota office for the 2020 crop year.

*The Agreement*

30.     Precisely because of his exposure to highly confidential and commercially sensitive customer information in his role as a Risk Management Specialist, Triplett was asked to sign the Agreement to restrict the potential disclosure of Diversified's confidential information and trade secrets, to protect this information generally and also in the event that Triplett left Diversified.

31.     Triplett executed the Agreement on February 20, 2015.  *See* Exhibit A.

32.     In paragraph 5 of the Agreement, Triplett acknowledged that he would be provided access to Diversified's highly confidential and proprietary information, as follows:

> The employee recognizes and acknowledges that during his/her affiliation with the Employer, he/she will have access to and be provided with certain confidential and proprietary business information, including but not limited to the Crop Insurance Advantage (CIA) system, the AgProfit Oracle, (which includes the DS Profit Matrix, , DS Super Matrix, DS Strategizer, DS OU/EU Optimizer, DS Hail Quoter and the PRF Quoter), the DS Quote System, policy worksheets, sales territory information, marketing and business plans, client and customer information, customer lists, and pricing information, all of which are of substantial value to the

Employer and its business.  The Employee acknowledges that the Employer is engaged in the business of providing crop insurance and consulting services to the agricultural and investment communities.

33.    In Paragraph 6 of the Agreement, Triplett agreed to certain customer non-solicitation restrictions, as follows:

> If the Employee is discharged for reasons other than cause, or if the Employee voluntarily terminates his/her employment/affiliation, the Employee agrees that in addition to any other limitation, during his/her employment and for a period of two (2) years commencing on the last date of employment/affiliation with CGB ("the restricted period"), he/she will not, on his/her behalf or on behalf of any other person, firm or corporation, all on any of the CGB Diversified Services, Inc. customers, independent agents, farmers, or insureds for the purpose of soliciting and/or providing crop insurance, grain marketing services, or grain hedging or brokerage services and/or providing to any of these customers any information relating to the Employer's or a competitor's services, nor will the Employee in any way, directly or indirectly for himself, or on behalf of any other person, firm or corporation, solicit, divert or take away any customer of the Employer, its affiliates or its subsidiaries in the assigned territory within the State(s) of Minnesota and South Dakota.  Employee is further prohibited from doing business with and/or accepting business with any CGB customer at any time within the restricted period.

> The Employee's right to compete has been limited only to the extent necessary to protect the Employer from unfair competition.  However, reasonable people may differ in making this determination.  If this restrictive covenant's scope or enforceability is disputed, a court or other trier of fact may modify and enforce the covenant to the extent necessary to be reasonable and enforceable under these circumstances.

34.    Paragraph 8 of the Agreement contains an additional restrictive covenant as follows:

> If the Employee is discharged for cause, or if the Employee voluntarily terminates an affiliation, the Employee also agrees that during his affiliation and for a period of two (2) years commencing on the last date of affiliation with the Employer, he will not engage in any employment, consulting or any other job with the same duties as those described in section 1 of this Agreement with any company or his own company within the same industry as CGB Diversified Services, Inc. in the assigned territory within the Stat(s)e of Minnesota and South Dakota.

35.  Thus, in order to ensure the protection of Diversified's confidential and proprietary business information, Triplett agreed that he would not: (1) solicit Diversified customers for a period of two years following the termination of his employment with Diversified; and (2) engage in similar work, whether with another company or his own company, with then the same industry.

36.  These covenants prohibit Triplett from engaging in the restricted conduct for a period of two years and within the limited territory in which Triplett worked during his employment with Diversified and are therefore reasonable in both temporal and geographic scope.

37.  Additionally, Triplett also agreed and acknowledged that a breach of the Agreement would irreparably harm Diversified. In particular, Triplett agreed, as follows in Paragraph 11 of the Agreement:

> In the event of a breach of this Agreement, the Employee acknowledges that the remedy at law would be inadequate and that CGB Diversified Services, Inc.  Shall be entitled to an injunction restraining such breach, attorneys' fees, and any other entity provided by law.  Employee further agrees that should any court issue a temporary restraining order and/or injunctive relief of any kind, Employer shall not be required to post a bond.

### *Triplett's Misconduct*

38.  Notwithstanding the promises he made in the Agreement, since abandoning his employment with Diversified, Triplett has:

a.  Used trade secrets, confidential, and/or proprietary information to solicit and service Diversified's customers in the crop insurance industry for the benefit of himself and/or others;

b.  Engaged in actions directly against the business interests of, and in competition with, Diversified; and/or

c.  Engaged in actions that interfered with Diversified's contracts and business relationships.

39.     On or about December 1, 2020, while and still employed with Diversified, Triplett requested that the sales support specialist (Roberta Klimek) in the Buffalo, Minnesota office generate and provide him with batch cancellation/non-renewal report for all 232 customers of Diversified whose policies were being serviced by Triplett.  Cancellation and non-renewal notices are typically signed by insureds and submitted in order to terminate a relationship with an agency and move their business to a different agency.

40.     Ms. Klimek complied with Triplett's request and provided him with the cancellation/non-renewal information for the 232 Diversified customers.  These documents were generated through—and relied on data compiled and maintained by Diversified in—the Crop Insurance Advantage (CIA) system, a proprietary and password-protected data management system. Ms. Klimek notified no one at Diversified of Triplett's request or that he had obtained the batch documents.

41.     On or about December 7, 2020, Triplett requested that Ms. Klimek generate a report and create a Microsoft Excel spreadsheet containing information on all 232 Diversified customer insurance policies serviced by Triplett.  These reports typically contain information such as all available points of contact information, policy notes, acreage reports, claims histories, current and historical premiums, renewal information, and other coverage information.  This information is also stored and maintain in the CIA System at Diversified.

42.     Again, Ms. Klimek complied with Triplett's request and provided him with the document containing information on all of the accounts serviced by Triplett and notified no one at Diversified of the request.

43.     On information and belief, Diversified believes that Triplett engaged in an additional information gathering and collection, either individually or with the assistance of Ms.

12

Klimek and possibly others, and the weeks prior to his sudden and unannounced departure from Diversified.  A forensic investigation into additional improper and clandestine efforts is ongoing at Diversified.

44.     On December 31, 2020, Crop Revenue Agency, LLC (CRA) was created through the filing of a certificate of formation with the Minnesota Secretary of State.  According to the Minnesota Secretary of state records, the registered office address for CRA is 830 County Road 6 NW, Annandale Minnesota 55302.  This is the same address believed to be Triplett's home address.  On information and belief, Triplett formed CRA for the express purpose of creating an agency to compete with Diversified.

45.     On or about January 4, 2021, Triplett abandoned his employment with Diversified and his position as a Risk Management Specialist.  On information and belief, Triplett notified no one at Diversified that he was leaving his employment for the primary reason that he wanted to continue in his misconduct for as long as possible without detection.

46.     On or about January 6, 2021, CRA obtained its agency license (Licence No. 40720198) and was assigned a national producer number.   On information and belief, CRA is a crop insurance agent licensed by the Risk Management Agency of the U.S. Department of Agriculture, which manages the Federal Crop Insurance Corporation. On information and belief, Triplett registered "Crop Revenue Management" as a d/b/a for license-holder Crop Revenue Agency LLC.

47.     Thus, Triplett formed a competing agency and, within days of his abrupt departure from Diversified without notice, was operating a licensed agency and selling crop insurance directly to Diversified customers, including the 232 Diversified customers whose policies were serviced by Triplett just days earlier.  Effectively, armed with the confidential and proprietary

business information that he took when he left Diversified, Triplett began violating the non-solicitation and non-compete provisions of the Agreement almost immediately after abandoning his employment with Diversified.

48.     The Diversified agents who were reassigned the accounts previously serviced by Triplett began contacting those customers to make introductions and assure them that they would be no disruption in the continuity of service.   During those communications, the agents were notified by many of the insureds that Triplett had already notify them of his departure from Diversified Further, the agents were notified that Triplett had solicited them (the insureds) to cancel or not renew their policies with Diversified.   Many of the insureds stated that Triplett provided them with a cancellation notice for them to sign and indicated that they would be moving their business to Triplett's new agency.

49.     Upon information and belief, since his abandonment of his employment with Diversified, Triplett has been in contact with most or all of Diversified's insureds for whom he was the crop insurance agent during his employment with Diversified with regard to cancelling their policies of insurance with Diversified.

50.     For example, on or about February 18, 2021, Diversified was provided a copy of a Multiple Peril Crop Insurance Application / Transfer-Application form dated February 17, 2021 and signed by one of the Minnesota crop insurance policyholders that Triplett serviced while employed at Diversified.   These applications are completed by insureds looking to switch their coverage to a competitor insurance company. Triplett is the licensed agent identified on the Transfer-Application and the email that he provided is wayne@croprevenuemanagement.com," an email address that he often used while still employed at Diversified. The insurance company where Triplett was placing the coverage is Rural Community Insurance Company ("RCIS"), a

direct competitor of Diversified. The Transfer-Application identifies Diversified as the "previous" approved insurance provider and contains the Diversified policy number.

51.     There is nothing ambiguous here: Triplett sold crop insurance on behalf of a direct competitor to one of the Diversified policyholders that Triplett serviced while previously employed at Diversified, in clear violation of his contractual obligations and common law duties. On information and belief, this cancellation of coverage and placement with a direct competitor was facilitated by Triplett's possession and use of misappropriated Diversified confidential and proprietary information. Unless the Court immediately restrains and enjoins Triplett from engaging in similar efforts, many more of these cancellations will certainly follow.

52.     Triplett has already taken actions and continues to act in direct competition with Diversified.  His continued involvement in providing services related to crop insurance directly or indirectly with Crop Revenue Agency LLC d/b/a Crop Revenue Management (or other agents or agencies) would continue to involve him in the sales of products and services that are in direct competition with Diversified and would require him to use the Diversified trade secrets that he obtained by virtue of his employment at Diversified.

53.     Triplett poses a particular competitive threat to Diversified, not merely because he knows Diversified's trade secrets, but because he developed relationships with significant Diversified customers or potential customers on the strength of Diversified's goodwill, products and services in his role as a Risk Management Specialist.  Triplett, individually, and/or directly or indirectly with Crop Revenue Agency LLC d/b/a Crop Revenue Management, or other agents/agencies, has already attempted—and continues attempting—to leverage some of those relationships to get Diversified customers to cancel their policies with Diversified. Those

relationships are the quintessential component of the goodwill that Diversified seeks to protect by obtaining non-solicitation and non-compete agreements with its employees, including Triplett.

54.     The potential harm to Diversified is far from insignificant. The 232 policies that were serviced by Triplett represent nearly $4,000,000 in combined premiums in for the 2020 crop year—more than three times the amount of any other producer in the Buffalo, Minnesota office and almost three times the total amount of premiums for all other producers in that office combined. The loss of this business as a of Triplett's deceitful and prohibited conduct would have a permanent and devastating impact on the future viability of an office.

55.     Triplett has already shown that he intends to solicit Diversified's customers—customers whose identities, needs, and strategic approach he learned and cultivated while at Diversified—and to compete with Diversified using information that he improperly took from Diversified.

## COUNT I

### Breach of the Confidentiality, Non-Compete and Non-Solicitation Agreement

56.     Diversified repeats and realleges, as if fully set forth herein, the allegations of the preceding paragraphs.

57.     The Agreement is valid and enforceable and imposes upon Triplett specific contractual obligations.

58.     Diversified has complied with all material terms of the Agreement.

59.     Triplett has breached the terms of the Agreement by the conduct described herein, including, but not limited to, using and/or disclosing Diversified's trade secrets and other confidential and proprietary information; engaging in actions directly against the business interests

of, and in competition with, Diversified; and engaging in actions that interfere with Diversified's contracts and business relationships.

60.     As Triplett agreed in the Agreement, if he is not enjoined from this unlawful conduct and unfair competition, in violation of his Agreement, any remedy at law will be inadequate, and Diversified will be irreparably injured.

61.     In view of the similarity between Triplett's job at Diversified and the role he is performing through Crop Revenue Agency d/b/a Crop Revenue Management, or other agents/agencies, he will inevitably make use of and/or disclose Diversified's trade secrets and other confidential and proprietary information.

62.     In these circumstances, Diversified is entitled to an injunction to prevent such irreparable injury.  Diversified is also entitled to recover money damages, resulting from Triplett's breach of his Agreement.

### COUNT II
### Misappropriation of Trade Secrets
### Under 18 U.S.C. § 1832, the Defend Trade Secrets Act ("DTSA")

63.     Diversified repeats and realleges, as if fully set forth herein, the allegations of the preceding paragraphs.

64.     Diversified possesses certain valuable trade secrets and confidential information, including, without limitation, Diversified's private-risk management products and systems, information about crop insurance and Diversified's customers, sensitive strategic information about detailed marketing plans, insurance product development, risk analysis, and customer and agent development and retention, along with numerous proprietary matrices relating to indemnities and pricing, all of which constitute trade secrets under federal law as embodied in 18 U.S.C. § 1832 *et seq.*  These trade secrets provide independent economic value by virtue of not being known

to, and not being readily ascertainable by proper means by other persons who could obtain economic value from the disclosure of such information.

65.     Diversified is incorporated in Louisiana and uses its trade secrets and confidential information in certain services that are subject to federal regulation and provides that information to farmers across the country, including in Minnesota and other states.  As such, the trade secrets at issue and Diversified's claims are related to products and services used in interstate commerce.

66.     Triplett is familiar with these trade secrets and confidential information by virtue of his role at Diversified, and thus Triplett has a statutory duty under the DTSA not to disclose or use this information outside of Diversified.

67.     On information and belief, Triplett misappropriated certain confidential information belonging to Diversified and that constitute trade secrets under the DTSA.

68.     Diversified takes reasonable steps to protect the secrecy of its trade secrets and other confidential and proprietary information, including, though not limited, to having employees with access to such information sign confidentiality agreements.  Diversified also restricts access to certain of its confidential and proprietary information and trade secrets on a need-to-know basis and requires credentialed log-on to access certain information.  Diversified also employs physical security requirements to protect against improper facility access.

69.     Triplett himself recognized in the Agreement that Diversified possesses confidential information that is competitively valuable to Diversified.

70.     On information and belief, Diversified's trade secrets have been and will continue to be misappropriated and/or improperly used by Triplett.

71.     On information and belief, Triplett's violations of the DTSA are willful.

72.     There is a genuine and imminent threat that Triplett will continue to disclose or use Diversified's trade secrets and other proprietary and confidential information to the detriment of Diversified's business and to the benefit of Crop Revenue Agency LLC d/b/a Crop Revenue Management, or other agents/agencies.

73.     Diversified has been and will continue to be damaged by Triplett's misappropriation of Diversified's trade secrets and confidential information, including, without limitation, lost customers, lost customer relationships, lost revenue, loss of goodwill, reputational injury, and other damages.

74.     In these circumstances, Diversified is entitled to an injunction to prevent such irreparable injury.  Diversified is also entitled to recover any money damages resulting from Triplett's violations of the DTSA.

## COUNT III

### Misappropriation of Trade Secrets under Minn. St. Chapter 325C et seq., the Minnesota Uniform Trade Secrets Act ("MUTSA")

75.     Diversified repeats and realleges, as if fully set forth herein, the allegations of the preceding paragraphs.

76.     Diversified possesses certain valuable trade secrets and confidential information, including, without limitation, Diversified's private-risk management products and systems, information about crop insurance and Diversified's customers, sensitive strategic information about detailed marketing plans, insurance product development, risk analysis, and customer and agent development and retention, along with numerous proprietary matrices relating to indemnities and pricing, all of which constitute trade secrets under the MUTSA.

77.     Triplett is familiar with these trade secrets and confidential and proprietary information by virtue of his employment with Diversified, and thus, has a statutory duty under the MUTSA not to disclose or use such information outside of his role Diversified.

78.     On information and belief, Triplett misappropriated certain confidential information belonging to Diversified and that constitute trade secrets.

79.     Diversified takes reasonable steps to protect the secrecy of its trade secrets and other confidential and proprietary information, including, though not limited to, having employees with access to such information sign confidentiality agreements.  Diversified also restricts access to certain of its confidential and proprietary information and trade secrets on a need-to-know basis and requires credentialed log-on to access certain information.  Diversified also employs physical security requirements to protect against improper facility access.

80.     Triplett himself recognized in the Agreement that Diversified possesses confidential information that is competitively valuable to Diversified.

81.     On information and belief, Diversified's trade secrets have been and will continue to be misappropriated and/or improperly used by Triplett.

82.     On information and belief, Triplett's violations of the MUTSA are willful.

83.     There is a genuine and imminent threat that Triplett will continue to disclose or use Diversified's trade secrets and other proprietary and confidential information to the detriment of Diversified's business and to the benefit of Crop Revenue Agency, LLC d/b/a Crop Revenue Management, or other agents/agencies.

84.     Diversified has been and will continue to be damaged by Triplett's misappropriation of Diversified's trade secrets and confidential information, including, without

limitation, lost customers, lost customer relationships, lost revenue, loss of goodwill, reputational injury, and other damages.

85.    In these circumstances, Diversified is entitled to an injunction to prevent such irreparable injury.  Diversified is also entitled to recover any money damages resulting from Triplett's violations of the MUTSA.

## COUNT IV

### Tortious Interference with Contracts

86.    Diversified repeats and realleges, as if fully set forth herein, the allegations of the preceding paragraphs.

87.    Triplett has improperly, intentionally, and without just cause induced one or more of Diversified's customers to cancel or not renew their policies with Diversified.

88.    As a consequence of such tortious interference by Triplett, Diversified has suffered damages and will continue to suffer irreparable harm if equitable relief is not granted.

## COUNT V

### Tortious Interference with Prospective Business Advantages or Relationships

89.    Diversified repeats and realleges, as if fully set forth herein, the allegations of the preceding paragraphs.

90.    Triplett has improperly, intentionally, and without just cause induced one or more of Diversified's customers to cancel or not renew their policies with Diversified.

91.    As a consequence of such tortious interference by Triplett, Diversified has suffered damages and will continue to suffer irreparable harm if equitable relief is not granted.

## COUNT VI

### Breach of Duty of Loyalty

92.     Diversified repeats and realleges, as if fully set forth herein, the allegations of the preceding paragraphs.

93.     While employed at Diversified, Triplett improperly and intentionally accessed and appropriated Diversified's confidential and proprietary business information for the purpose of assisting himself or others in inducing one or more of Diversified's customers to cancel or not renew their policies with Diversified.

94.     As a consequence of Triplett's conduct in breach of his duty of loyalty to Diversified, Diversified has suffered damages and will continue to suffer irreparable harm if equitable relief is not granted.

## COUNT VII

### Breach of Fiduciary Duty

95.     Diversified repeats and realleges, as if fully set forth herein, the allegations of the preceding paragraphs.

96.     Both during and after his employment with Diversified, Triplett has improperly and intentionally accessed, appropriated, and utilized Diversified's confidential and proprietary business information for the purpose of assisting himself or others in inducing one or more of Diversified's customers to cancel or not renew their policies with Diversified. There existed a special relationship of trust and confidence that existed between Diversified and Triplett and Triplett's prior and on-going conduct constates a breach of the fiduciary duty arising from that relationship.

97.     As a consequence of Triplett's conduct in breach of his fiduciary duty to Diversified, Diversified has suffered damages and will continue to suffer irreparable harm if equitable relief is not granted.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Diversified demands judgment seeking relief as follows:

(a)     Imposition of a temporary, preliminary, and permanent injunction, for a period of two (2) years, enjoining Triplett, and any person in concert or participation with him, from (i) directly or indirectly cancelling any Diversified crop insurance policy or transferring any Diversified crop insurance policy to another insurance provider, agent, or agency; (ii) attempting to cancel or transfer any such policy; and/or (iii) submitting an application to any insurer to cancel or transfer any such policy;

(b)     Imposition of a temporary, preliminary, and permanent injunction, for a period of two (2) years, relieving Diversified from any requirement to process any applications to cancel or transfer Diversified crop insurance policies for any Diversified customers previously serviced by Triplett;

(c)     Imposition of a temporary, preliminary, and permanent injunction, for a period of two (2) years, ordering Triplett to refrain from: (i) directly or indirectly soliciting, selling, servicing, or otherwise processing crop insurance in violation of the terms of the Non-Solicitation, Non-Compete and Confidentiality Agreement; (ii) directly or indirectly soliciting or servicing for competitive business purposes, including, but not limited to, processing crop insurance for any current or former Diversified customer; and (iii) directly or indirectly working through Crop Revenue Agency,

LLC d/b/a Crop Revenue Management, or other agents/agencies to provide crop insurance services in violation of the terms of the Non-Solicitation, Non-Compete and Confidentiality Agreement;

(d)     Imposition of a temporary, preliminary, and permanent injunction ordering Triplett to refrain from: (i) directly or indirectly using, disclosing, retaining, or otherwise misappropriating any of Diversified's trade secrets and confidential and proprietary information; (ii) directly or indirectly working through Crop Revenue Agency, LLC d/b/a Crop Revenue Management, or other agents/agencies that would create a risk of inevitable disclosure of Diversified's trade secrets and confidential and proprietary information;

(e)     Imposition of a temporary, preliminary, and permanent injunction ordering Triplett to refrain from disparaging Diversified or in any way, directly or indirectly, dissuading actual or potential crop insurance customer from doing business with Diversified, or otherwise, directly or indirectly, encouraging any actual or potential crop insurance customer to choose a competitor over Diversified;

(f)     Awarding Diversified its attorneys' fees, costs, and disbursements incurred as a result of this action;

(g)     Awarding Diversified monetary damages in an amount sufficient to compensate Diversified for Triplett's breaches of contract, violation of federal and state law, and tortious interference with Diversified's contractual relations;

(h)     Awarding Diversified exemplary damages in light of Triplett's willful behavior; and

     (i)      Awarding Diversified such further relief as the Court deems just and proper.

Respectfully submitted this 19th day of February, 2021.

/s/ Todd M. Church

Todd M. Church (Lead Counsel)
LITTLER MENDELSON, P.C.
321 North Clark Street, Suite 1100
Chicago, IL  60654
(312) 372-5520
tchurch@littler.com

Kevin M. Duddlesten (*admission pending*)
DUDDLESTEN LAW GROUP, PLLC
4347 W Northwest Hwy Ste 130, PMB 325
Dallas, TX 75220
Phone: (214) 833-5228
Facsimile: (469) 457-6785
Email: kevin@duddlestenlawgroup.com

ATTORNEYS FOR THE PLAINTIFF, CGB
DIVERSIFIED SERVICES, INC.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney certifies that on February 19, 2021, he caused true and correct copies of the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all Filing Users.


_/s/Todd M. Church_ 
Attorney for Plaintiff